# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**No. 24-7063**

**September Term, 2024**

FILED ON: AUGUST 15, 2025

MICHAELA SMITH,
>               APPELLANT

v.

HOWARD UNIVERSITY,
>               APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-00920)

---

Before: SRINIVASAN, *Chief Judge*, and HENDERSON and CHILDS, *Circuit Judges*.

## J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral argument of the parties. The panel has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is hereby

**ORDERED AND ADJUDGED** that the district court's order granting summary judgment be **AFFIRMED**.

I.

As a first-year medical student at Howard University, Michaela Smith enrolled in a class called Structure & Function: Unit 2. On January 28, 2019, Smith and other students took an exam in the course. The exam required students to examine plastic models and identify which body parts had been "tagged." J.A. 186–87. For Question 14, Smith was unsure whether the tagged part was the "anterior" or "posterior" semicircular ear canal, and she ultimately answered: "anterior semicircular canal." J.A. 187. Two days later, Smith received her graded answer sheet and learned that the correct answer to Question 14 was "posterior" rather than "anterior." Her answer thus was marked incorrect.

Smith sought to challenge the grading. She completed a challenge form and said the

following about Question 14: "My answer was correct, yet marked wrong" and "recalculation needed." J.A. 348. But Smith also altered her exam answer sheet itself: she changed her incorrect answer from "anterior" to "posterior" by writing discretely over the letters. J.A. 190.

Unfortunately for Smith, Howard had a standard practice of photocopying answer sheets before returning them to students. Her instructor noted the difference between the original answer sheet and the one that Smith submitted along with her challenge. The matter was then raised to the Senior Associate Dean for Academic Affairs, Dr. Debra Ford. When Dr. Ford confronted Smith about the altered answer sheet, Smith admitted that she had changed her answer to Question 14. Smith claims that she attempted to defend herself, but that Dr. Ford cut her off before she could explain any further. Dr. Ford informed Smith that she would be assigned a grade of zero on the exam and that the matter would be referred to Howard's Honor Council.

The Honor Council hearing took place on April 16, 2019. When it was Smith's turn to speak, she began by thanking the Honor Council for "meeting to hear her side of the events to clarify gross allegations made against her and apologize for the problem." J.A. 492. Smith resolutely denied that she had engaged in academic dishonesty. She claimed that she had not altered the answer sheet to improve her grade but merely to begin a conversation with her instructor about her knowledge of the inner ear canal. She described her "mistake" as using "short hand notation" to express herself. J.A. 495. Smith further said that "false allegations" of cheating had been made by her instructors "to impugn her reputation," and that this was all an effort to "demonize[]" and "wrongfully charge" her. J.A. 492.

Immediately after the hearing concluded, without further discussion, the panel unanimously found Smith guilty of academic dishonesty. The panel turned next to the question of the appropriate sanction. Multiple panel members expressed that the way Smith had handled herself in the hearing—presenting a patently unbelievable story and shifting blame onto others—raised concerns that she would be an untrustworthy medical professional. The Honor Council wrote the Dean to recommend Smith's expulsion.

On June 3, the Dean of the Medical School met with Smith to decide whether to adopt the expulsion recommendation. In the meeting, Smith again admitted she had altered the answer sheet, again insisted she had not engaged in academic dishonesty, and again "did not express any remorse, apologize, or accept any responsibility for her actions." J.A. 323. The Dean "concluded that there was no reason to expect [her] to conduct herself with integrity going forward," and he adopted the Honor Council's expulsion recommendation. *Id*.

Smith then filed this lawsuit, asserting two causes of action: violation of her statutory right against sex-based discrimination under Title IX, and breach of an implied educational contract. The district court granted summary judgment to Howard on both causes of action. Smith appealed and was appointed an Amicus to present arguments supporting her position in the appeal. Smith adopted Amicus's brief and did not file separate papers.

## II.

Amicus argues that the grant of summary judgment should be reversed as to both Smith's Title IX claim and her contract claim. We affirm the district court.

## A.

The question on Smith's Title IX claim is whether she produced sufficient evidence for a reasonable jury to conclude that Howard expelled her because of her sex. Howard claims that it expelled Smith because she cheated. Amicus argues that Howard's explanation is pretextual because Howard did not expel three male students who committed academic dishonesty around the same time. Two of those students cheated on their exams in the same fashion as Smith—by covertly altering their answer sheets and submitting the altered answer to challenge their grade. Unlike Smith, however, neither was expelled for the offense and both instead received notations on their permanent records. A third male student committed different misconduct: he screenshotted a quiz and shared it with other students. He was suspended for thirty days but not expelled.

Howard explains that it did not expel those male students because they, unlike Smith, acknowledged they had cheated, accepted responsibility, and expressed remorse. One student spoke at his Honor Council hearing to "apologize[] for his transgressions," say that he "compromised [his] medical education and . . . future patients," and admit that he had tried to improve his grade because he was on the cusp of failing. J.A. 595. The hearing minutes reflect that the Honor Council Chair "appreciated [the student's] honesty." J.A. 595. Uncontested evidence indicates that the other two students also admitted to having violated Howard's honor code. The Dean states that he did not expel these students because they "admitted to their violations, apologized, and expressed contrition and remorse," such that he "felt that they had learned from the experience and would in the future likely conduct themselves with integrity." J.A. 324.

Amicus contends that Smith, too, took responsibility (she said her "short hand notation" was a "mistake," J.A. 495), and she, too, expressed remorse (she thanked the panel for allowing her to "apologize for the problem," J.A. 492). Smith, though, never admitted to academic dishonesty. In fact, Smith maintained in her deposition for this lawsuit that she did not alter the answer to get a better score on the exam. J.A. 190. Smith's apology was not for cheating—it was for the "problem" of the need to have a hearing. And Smith's acknowledgement of a mistake was not for cheating—it was for the claimed mistake of using the shorthand of altering her answer to begin a conversation with her instructor.

In short, whereas there is uncontested evidence that the male students admitted to academic dishonesty and accepted responsibility, there is ample evidence that Smith did no such thing. On

this record, no reasonable jury could conclude that Howard expelled Smith because of her sex as opposed to Howard's proffered reason.

Finally, Amicus attempts to bolster its pretext argument by pointing to various procedural differences in Howard's handling of Smith's case as compared to the male students' cases. For example, Amicus notes that Dr. Ford was the only administrator present at the meeting with Smith while a second administrator was present at Dr. Ford's meeting with one of the male students. The "[m]inor procedural irregularities" pointed to by Amicus are insufficient to "demonstrate pretext." *Breiterman v. U.S. Capitol Police*, 15 F.4th 1166, 1175 (D.C. Cir. 2021); *see also Iyoha v. Architect of the Capitol*, 927 F.3d 561, 571 (D.C. Cir. 2019).

B.

Turning to Smith's contract claim, Howard accepts that it had an implied educational contract with Smith and that the contract contains an implied duty of good faith and fair dealing. *See Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000). The covenant is violated if either party "evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party." *Id.* But Howard argues that no reasonable jury could find that it violated that covenant. We agree.

Amicus primarily contends that Howard breached the implied covenant by acting inconsistently with various provisions of the school's Policies and Procedures Manual. In theory, a university's deviation from its own promulgated procedures in a disciplinary matter could amount to "the kind of substantial non-compliance that could support a finding of a breach of the implied covenant of good faith and fair dealing." *Wright v. Howard Univ.*, 60 A.3d 749, 756 n.5 (D.C. 2013). The purported deviations Amicus identifies, however, do not approach that level.

Amicus objects to the time it took Howard to resolve the matter, arguably at odds with the Manual's emphasis on timely resolution. Amicus also points to the Manual's instruction that the Honor Council investigate allegations of academic dishonesty and asserts that review of the relevant documents by Honor Council officials was insufficient investigation. Finally, Amicus flags that a student who was not on the Honor Council roster sat on the panel for Smith's hearing due to the last-minute unavailability of certain student members, which Amicus argues was improper (although the Manual does not expressly speak to the propriety of replacing a student with a nonmember that way).

Even assuming Howard failed to comply with the Manual in those ways, its asserted failures are minor. No reasonable jury could find that Howard strayed so far from its own policies that it denied Smith the benefit of the educational contract. Nor could a reasonable jury find "either bad faith or conduct that is arbitrary and capricious" based on the alleged procedural noncompliance. *Chenari v. Geo. Wash. Univ.*, 847 F.3d 740, 745 (D.C. Cir. 2017) (quoting *Wright*, 60 A.3d at 754). Thus, there is no genuine dispute as to whether Howard violated the

implied covenant of good faith and fair dealing.

Amicus attempts to use the asserted Manual violations in another way: Amicus argues that the Manual *itself* entered the implied educational contract between Smith and Howard, such that the Manual's terms became contract terms and violation of the Manual itself became a breach of the implied contract. That contract theory was not presented to the district court and is thus forfeited. In the summary judgment proceedings, Smith argued only that there was an implied educational contract and that Howard's substantial noncompliance with its own procedures was "evidence of arbitrary or capricious action." J.A. 75. That is essentially a different contract claim—with a different theory of Howard's obligations under the contract and of how Howard breached it. We cannot consider this functionally new claim for the first time on appeal. *See Apprio, Inc. v. Zaccari*, 104 F.4th 897, 910 (D.C. Cir. 2024) ("It is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal.").

\*    \*    \*    \*    \*

For the foregoing reasons, we affirm the district court's grant of summary judgment to Howard on both claims.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**Per Curiam**

FOR THE COURT:
Clifton B. Cislak, Clerk

BY:     /s/
Daniel J. Reidy
Deputy Clerk